COMMONWEALTH vs. MARIA LANDRY.

Essex. October 10, 2002. - December 6, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Hypodermic Needle. Statute,* Construction. *Municipal Corporations,* By-laws
and ordinances. *Arrest. Probable Cause. Search and Seizure,* Arrest, Prob-
able cause. *Constitutional Law,* Search and seizure.

This court concluded that a participant in an approved hypodermic needle
exchange program could legally possess throughout the Commonwealth
hypodermic needles obtained from such program [208-209], and that prob-
able cause to arrest did not exist when an individual, found to be in pos-
session of hypodermic needles, presented a facially valid needle exchange
program membership card [209-211].

COMPLAINT received and sworn to in the Lynn Division of the
District Court Department on May 14, 2001.

Questions of law were reported to the Appeals Court by
*Michael C. Lauranzano,* J. The Supreme Judicial Court granted
an application for direct review.

*Sarah R. Wunsch* (*Alicia L. Young,* of New York, with her)
for the defendant.

*Daniel I. Smulow,* Assistant District Attorney, for the
Commonwealth.

The following submitted briefs for amici curiae:

*Donna Levin & Edmund J. Sullivan, III,* for Department of
Public Health.

*Bennett H. Klein* for Infectious Diseases Society of America
& others.

*James Lamanna* for city of Lynn & others.

*Cristina Beamud, Mary Jo Harris, Ralph C. Martin, II, Rus-
sell Sienkiewicz, Schuyler Meyer, & George F. McLean* for
Ralph C. Martin, II, & others.

*David G. Evans & Michael O. Dermody* for Lea Palleria Cox
& others.

COWIN, J. In 1993, the Legislature authorized the Department of Public Health (department) to implement a pilot needle exchange program in cities and towns that grant local approval.[1] See G. L. c. 111, § 215, inserted by St. 1993, c. 110, § 148. Participants in such a program may exchange used syringes and hypodermic needles for sterile ones at program locations and may gain access to a variety of drug treatment, counselling, and health care services. At the same time it established the pilot needle exchange program, the Legislature amended G. L. c. 94C, § 27, which prohibits the possession of hypodermic needles and syringes, to include the following provision:

"(f) Notwithstanding any general or special law to the contrary, needles and syringes may be distributed or possessed as part of a pilot program approved by the department of public health in accordance with section two hundred and fifteen of chapter one hundred and eleven and any such distribution or exchange of said needles or syringes shall not be a crime. . . ."

G. L. c. 94C, § 27 (f), inserted by St. 1993, c. 110, § 142.

The defendant was charged with the possession of four hypodermic needles in violation of G. L. c. 94C, § 27 (a), within the city of Lynn. She moved to dismiss, claiming her possession of the needles was permitted by G. L. c. 94C, § 27 (f). The defendant asserted that, prior to her arrest, she provided the police with a facially valid membership card indicating her enrollment in a properly approved pilot program operating in the city of Cambridge. The Commonwealth, disputing the defendant's interpretation of § 27 (f), claimed that the provision only permits program participants to possess needles in cities and towns that either host approved needle exchange programs (exchange jurisdictions) or authorize possession by locally approving another community's program. The city of Lynn has done neither. A District Court judge stayed the proceedings and reported two questions of law to the Appeals Court pursuant to

[1] The number of authorized needle exchange programs was later set at not more than ten. See G. L. c. 111, § 215, as appearing in St. 1995, c. 38, § 128. There are approved programs currently operating in Boston, Cambridge, Provincetown, and Northampton.

Mass. R. Crim. P. 34, 378 Mass. 905 (1979).[2] Because the questions reported raise issues of Statewide importance, we granted the Commonwealth's application for direct appellate review.

We conclude: (1) A participant in an approved needle exchange program may legally possess throughout the Commonwealth hypodermic needles obtained from a program.[3] (2) Probable cause to arrest does not exist when an individual, found to be in possession of hypodermic needles, presents a facially valid needle exchange program membership card.

1. *The Scope of G. L. c. 94C, § 27 (f).*

General Laws c. 94C, § 27 (*f*), is silent on the question whether the possession of syringes "as part of a pilot program" encompasses a geographic restriction. When faced with ambiguity in a statute we interpret it so as to avoid absurd or unworkable results. See *Commonwealth* v. *Wallace*, 431 Mass. 705, 708 (2000), quoting *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979).

The Commonwealth urges that we read § 27 (*f*) to limit the

---

[2]The two reported questions are:

"1. Is it 'a crime' for an enrollee in a Department of Public Health approved needle exchange program in a particular city or town 'to distribute or possess needles or syringes' in another city or town that has not granted approval to the participant's program?

"2. Does the language of G. L. c. 94C, § 27 (*f*) that 'distribution or possession of [needles or syringes] as part of a pilot program approved by the Department of Public Health in accordance with' G. L. c. 111, § 215 'shall not be a crime' mean that a person who claims to be enrolled in a pilot needle exchange program and produces a facially-valid enrollment card cannot be arrested, summonsed, or otherwise charged with a violation of G. L. c. 94C, §§ (*a*) or (*e*), or does the statutory language mean that such enrollment in a pilot program is an affirmative defense to be raised at trial?"

[3]The judge's reported question asked us to address the legality of distributing, as well as possessing, hypodermic needles in a jurisdiction that has not approved a program ("nonexchange jurisdiction"). There are no allegations of illegal needle distribution in this case. We answer reported questions only insofar as necessary to resolve issues raised by the record, and therefore decline to reach the question whether the distribution of needles outside an exchange jurisdiction might be encompassed within the meaning of G. L. c. 94C, § 27 (*f*). See *Commonwealth* v. *Markvart*, 437 Mass. 331, 333 (2002).

legal possession of hypodermic needles to exchange jurisdictions. Such an interpretation, however, would clearly interfere with the purposes underlying the Legislature's creation of pilot needle exchange programs. In establishing these programs, the Legislature was attempting to combat a substantial public health threat: the transmission of blood-borne diseases by intravenous drug abusers. By encouraging users to obtain their needles from a program, rather than through unauthorized sources, the theory is that users will use the sterile needles supplied by the program. Such needles are "possessed as part of a pilot program," and do not cease to be possessed "as part of" that pilot program merely because the participant takes them across a municipal boundary. An interpretation of § 27 (*f*) that discourages program participation by effectively limiting where a participant may legally possess needles would certainly hinder, and might well defeat, the department's attempts to deal with the problem.

Article 89 of the Massachusetts Constitution, cited in the Commonwealth's brief and in the amicus brief filed on behalf of the city of Lynn, its city council, board of health, and police department, as dictating a contrary result, is inapplicable here.[4] Article 89 empowers cities and towns to enact local ordinances that do not conflict with the laws of the Commonwealth. See *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable*, 433 Mass. 217, 223 (2001). It does not permit localities to criminalize behavior legalized by the Legislature. See *American Motorcyclist Ass'n* v. *Park Comm'n of Brockton*, 412 Mass. 753, 756-757 (1992).

2. *Probable Cause to Arrest.*

The second reported question asks whether the police may arrest a person possessing a hypodermic needle or syringe after

---

[4]Article 89, § 6, of the Amendments to the Massachusetts Constitution, the Home Rule Amendment, provides in pertinent part:

> "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight . . . ."

that person presents a facially valid needle exchange enrollment card. Participants in the Commonwealth's needle exchange programs receive membership cards stating that the bearer may lawfully possess hypodermic needles and syringes. These cards, by design, obscure the identity of the participant; they bear only an identification number derived from the participant's mother's first name and the participant's date of birth. A police officer may dial a telephone number listed on the card to verify that the card was validly issued, but there is no way to ensure that the person possessing the card is actually a program participant.

Under the protections of the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution, a police officer may not lawfully arrest a person without probable cause to believe that a crime has been committed. "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980).

Possessing a hypodermic needle is not necessarily a crime. Licensed physicians, dentists, nurses, veterinarians, embalmers, pharmacists, and dealers in surgical supplies, among others, may lawfully possess hypodermic needles. See G. L. c. 94C, § 27 (*a*). Private citizens may also lawfully possess needles and syringes pursuant to a prescription, see G. L. c. 94, § 27 (*c*), or as part of an approved needle exchange program, see G. L. c. 94C, § 27 (*f*). The mere possession of an item that has many lawful applications but may be contraband in other circumstances does not, by itself, constitute probable cause to believe that the possession is illegal. See *Commonwealth* v. *Couture*, 407 Mass. 178, 180-181, cert. denied, 498 U.S. 951 (1990) (evidence of handgun possession alone not probable cause; there must be evidence that possession was illegal or handgun was used in crime); *Commonwealth* v. *Toole*, 389 Mass. 159, 163 (1983) (same). Cf. *Commonwealth* v. *Brookins*, 416 Mass. 97, 103-104 (1993) (evidence of handgun possession created probable cause to arrest combined with criminal activity and

flight). Although the majority of cases addressing the question when mere possession amounts to probable cause do so in the context of a search rather than an arrest, the distinction is immaterial because the same constitutional standards apply in both circumstances. See *Commonwealth* v. *Tarver*, 369 Mass. 302, 307 (1975); *Commonwealth* v. *Stevens*, 362 Mass. 24, 27 (1972), and cases cited.

While the possession of a hypodermic needle in a setting inconsistent with legitimate use (an alley, for example) would ordinarily establish probable cause to believe that the possession was illegal, that inference cannot be made once a suspect produces a facially valid exchange program membership card. A participant in a pilot needle exchange program is entitled to possess hypodermic needles in any setting, provided that possession is "part of a pilot program." G. L. c. 94C, § 27 (*f*). Although exchange program membership cards do not conclusively identify the bearer and therefore can be easily transferred to a nonparticipant, a police officer is not entitled to assume, without additional evidence, that such a transfer has actually occurred. See *Commonwealth* v. *Roman*, 414 Mass. 642, 643 (1993), quoting *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982) ("Probable cause to arrest 'requires more than mere suspicion . . .' "). It follows that, when a person presents a facially valid exchange program membership card, a police officer may not lawfully arrest that person for violating G. L. c. 94C, § 27, absent evidence that the card is invalid or the bearer is not entitled to possess it.

The Commonwealth argues that a claim of lawful possession pursuant to an exception to G. L. c. 94C, § 27, must be raised as an affirmative defense by the defendant at trial. See *Commonwealth* v. *Jefferson*, 377 Mass. 716, 718-719 (1979). While this is a correct statement of the law, a rule governing the evidentiary burden at trial has no bearing on the question whether probable cause to arrest exists when a police officer receives evidence that a suspect is lawfully in possession of potential contraband. See *Commonwealth* v. *Couture*, *supra* at 181-183 (addressing analogous issue in context of handgun possession).

The matter is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*